**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JEROME F. BECKES,

Plaintiff,

vs. No. 1:12-CV-00906

GRIDLINE COMMUNICATIONS HOLDINGS, INC.,

Defendant.

**COMPLAINT TO RECOVER UPON PROMISSORY NOTES**

Plaintiff, Jerome F. Beckes, for his complaint against Gridline Communications Holdings, Inc., alleges and states as follows:

1. Plaintiff Jerome F. Beckes is a citizen and resident of the State of New Mexico.

2. Defendant Gridline Communications Holdings, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 11625 Custer Road, Suite 110254, Frisco, TX 75035.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Defendant executed and delivered the following instruments in favor of Plaintiff:

   a. March 15, 2007 Bridge Note Agreement in the original principal amount of $500,000 and accruing interest thereon at the rate of twelve percent (12%) per annum (the "March 2007 Note"), a true and correct copy of which is attached hereto as **Exhibit 1** and incorporated by reference;

b. May 10, 2007 Bridge Note Agreement in the original principal amount of $300,000 and accruing interest thereon at the rate of eighteen percent (18%) per annum (the "May 2007 Note"), a true and correct copy of which is attached hereto as **Exhibit 2** and incorporated by reference;

c. February 11, 2008 Bridge Note Amendment amending the March 2007 Note, a true and correct copy of which is attached hereto as **Exhibit 3** and incorporated by reference;

d. February 11, 2008 Bridge Note Amendment amending the May 2007 Note to increase the principal due under the May 2007 Note to $330,000, a true and correct copy of which is attached hereto as **Exhibit 4** and incorporated by reference;

e. February 12, 2008 Bridge Note Agreement in the original principal amount of $50,000 and accruing interest thereon at the rate of eighteen percent (18%) per annum (the "February 2008 Note"), a true and correct copy of which is attached hereto as **Exhibit 5** and incorporated by reference;

f. July 8, 2008 Bridge Note Amendment further amending the March 2007 Note and acknowledging that the principal then due under the March 2007 Note was in the amount of $410,000 (reflecting a $90,000 payment against principal on April 11, 2008), a true and correct copy of which is attached hereto as **Exhibit 6** and incorporated by reference;

g. July 8, 2008 Bridge Note Amendment further amending the May 2007 Note, a true and correct copy of which is attached hereto as **Exhibit 7** and incorporated by reference;

h. July 21, 2008 Bridge Note Amendment amending the February 2008 Note to increase the principal due under the February 2008 Note to $65,000, a true and correct copy of which is attached hereto as **Exhibit 8** and incorporated by reference;

i. June 24, 2009 Amendment and Extension Agreement amending the March 2007 Note, the May 2007 Note, and the February 2008 Note, a true and correct copy of which is attached hereto as **Exhibit 9** and incorporated by reference; and

j. June 5, 2010 Amendment and Extension Agreement amending the March 2007 Note, the May 2007 Note, and the February 2008 Note (the "June 2010 Agreement"), a true and correct copy of which is attached hereto as **Exhibit 10** and incorporated by reference

(collectively, the "Promissory Notes").

5. Pursuant to the Promissory Notes, Defendant submits itself to the jurisdiction and venue of this Court and agrees that the Promissory Notes are governed and construed by the laws of the State of New Mexico.

6. Pursuant to the terms of the June 2010 Agreement, Defendant acknowledged and agreed that the $410,000 principal plus accrued interest and penalties payable under the amended March 2007 Note, the $330,000 principal plus accrued interest and penalties payable under the

amended May 2007 Note, and the $65,000 principal plus accrued interest and penalties payable under the amended February 2008 Note were past due and that the total unpaid balance of the Promissory Notes due and forthwith payable in full as of June 5, 2010 was $3,046,624.23.

7. In addition, pursuant to the June 2010 Agreement, Plaintiff agreed to extend the due date of the amounts payable under the Promissory Notes until September 30, 2010, in exchange for which Defendant agreed to pay an additional penalty of $5,000 per day for the term of the extension (June 5, 2010 through September 30, 2010, or 117 days), which equates to an additional $585,000 in penalties owed to Plaintiff by Defendant.

8. Defendant failed to make payment due upon the Promissory Notes as provided and required therein.

9. By letter dated July 11, 2012, Plaintiff, as holder of the Promissory Notes, gave written notice of default to Defendant; exercised his right to declare the amount of the total unpaid balance of the Promissory Notes due and forthwith payable in full, with penalties as provided in the Promissory Notes; and made demand for payment of all amounts due and owing upon the Promissory Notes.

10. Defendant acknowledged receipt of Plaintiff's July 11, 2012 written notice and demand, but Defendant has failed and neglected to make its required payments upon the Promissory Notes.

11. There is presently due and owing upon the Promissory Notes the sum of $3,046,624.23, interest on outstanding principal from June 5, 2010 through the date of judgment, and additional penalties in the amount of $585,000.

WHEREFORE, Plaintiff Jerome F. Beckes prays for judgment against Defendant Gridline Communications Holdings, Inc. for:

A. $3,046,624.23 in principal, interest and penalties owed on the Promissory Notes as of June 5, 2010;

B. Interest on the $410,000 principal owed under the amended March 2007 Note, from and including June 6, 2010 through date of judgment at the rate of twelve percent (12%) per annum;

C. Interest on the $330,000 principal owed under the amended May 2007 Note, from and including June 6, 2010 through date of judgment, at the rate of eighteen percent (18%) per annum;

D. Interest on the $65,000 principal owed under the amended February 2008 Note, from and including June 6, 2010 through date of judgment, at the rate of eighteen percent (18%) per annum;

E. $585,000.00 in additional penalties;

F. Plaintiff's costs in an amount to be determined by the Court;

G. Post-judgment interest; and

H. Such other and further relief as the Court finds just and proper.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
*Electronically Filed*
By: */s/ Henry M. Bohnhoff*
Henry M. Bohnhoff
Robert L. Lucero
Attorneys for Plaintiffs
P.O. Box 1888
Albuquerque, NM 87103
Telephone: 505-765-5900
Facsimile: 505-768-7395

# BRIDGE NOTE AGREEMENT

This Agreement by and between Gridline Communications Holdings, Inc., a corporation duly organized and existing under the laws of the State of Delaware, "Corporation" and Jerome F. Beckes, "Note Holder".

WITNESSETH:

WHEREAS, Note Holders agree to lend Corporation the aggregate sum of Five Hundred Thousand Dollars ($500,000.00), in exchange for this Twelve percent (12%) Bridge Note.

In consideration of the mutual covenants and conditions contained in this agreement, the parties agree, represent and warrant as follows:

1. Issue of Note

A. The Corporation hereby issues its Twelve (12) percent note, "Note" in the aggregate principal amount of Five Hundred Thousand Dollars ($500,000.00) to mature on the sixth (6th) month anniversary of the executed date of this Agreement, to bear interest on the unpaid principal thereof at the rate of Twelve (12) percent per annum until maturity, payable on the maturity date of this Agreement. For the purposes of calculating interest for any period for which the interest shall be payable, such interest shall be calculated on the basis of a thirty (30) day month and a three hundred sixty (360) day year. The Corporation will promptly and punctually pay to Note Holder or their nominee the full principal and accrued interest on the Note without presentment of the Note. In the event the Corporation defaults on the payment of interest and principal, then Note Holder may, at his option, without notice, declare the entire principal and the interest accrued thereon immediately due and payable and may proceed to enforce the collection thereof.

B. At signing, The Corporation shall execute and deliver to Note Holder a Warrant to purchase 500,000 shares of Common Stock of Gridline. The Corporation will authorize the issuance of and reserve for such purchase such a number of additional shares of common stock, "Warrant Stock" as may from time to time be the maximum number required for issuance upon exercise of the Warrant pursuant to the privileges hereinafter stated.

2. Sale and Purchase of Note and Stock

The Corporation will sell the Note to the purchaser, who agrees to purchase the principal amount of the Note, subject to the terms and conditions of and in reliance upon the representations and warranties of the Corporation contained in this agreement.

3. Representations and Warranties by the Corporation

A. Corporation, a duly organized corporation existing in good standing under the laws of the State of Delaware has the corporate power to own its own property and to carry on in the business as it is now being conducted.

B. There is no action or proceeding pending or threatened against the Corporation before any court or administrative agency, the determination of which might result in any material adverse change in the business of the Corporation.

C. The Corporation has title to the respective properties and assets including the properties and assets reflected on the financial statement for the year ending December 31, 2006 and which assets and properties are subject to no liens, mortgages, encumbrances or charges.

D The Corporation is not a party to any contract or agreement or subject to any restriction which materially and adversely affects its business, property, assets, or financial condition, and neither the execution nor delivery of this Agreement, nor the confirmation of the transactions contemplated herein, nor the fulfillment of the terms hereof, nor the compliance with the terms and provisions hereof and of the Note, will conflict with or result in the breach of the terms, conditions or provisions or constitute a default, under the Articles of Incorporation or of any Agreement or instrument to which the Corporation is now a party.

**Exhibit 1**

E. The Corporation has not declared, set aside, paid or made any dividend or other distributions with respect to its capital stock and has not made or caused to be made directly or indirectly, any payment or other distribution of any nature whatsoever to any of the holders of its capital stock except for regular salary payments for services rendered and the reimbursement of business expenses.

F. The Corporation owns or possesses adequate licenses or other rights to use, all patents, trademarks, trade names, trade secrets, and copyrights used in its business. No one has asserted to the Corporation that its operations infringe on the patents, trademarks, trade secrets or other rights utilized in the operation of its business.

4. Representations and Warranties by the Note Holders

The Note Holders represent and warrant that he is purchasing the Note for investment purposes and not with the view to or for sale in connection with any distribution thereof and that they have no present intent to sell, give or otherwise transfer the Note.

5. Prepayment of the Note

Corporation shall have the right to make prepayments on principal of the Note at any time. Such prepayment shall be accompanied by a payment of all accrued interest to date. There shall be no premium for the amount so prepaid however, prepayment shall not change or modify the Warrant terms.

6. Event of Default

A. The breach of any of the events or conditions contained in this Agreement shall constitute an event of default under this Agreement. Any one or more of the Holders of the Note may give written notice of such breach and if the Corporation shall within thirty (30) days after receipt of such written notice have failed to correct such occurrence or condition, then the Holder of any one of the Note may, at its option and without notice, declare the entire principal and interest accrued thereon immediately due and payable and may proceed with collection.

B. In case of default in the payment of any installment or principal, the Holders of the Note may, at their option and without notice, declare the entire principal and the interest accrued thereof immediately due and payable and may proceed to enforce the collection thereof.

7. Miscellaneous

A. Any and all notices, approvals or other communications to be sent to the parties shall be deemed validly and properly given if made in writing and delivered by hand or by registered or certified mail, return receipt requested, and addressed to the Corporation at its principal office or to the Holder of the Note at the addresses given to the Corporation by Note Holder.

B. This Agreement may not be modified, amended or terminated except by written agreement executed by all the parties hereto.

C. The waiver of any breach or default hereunder shall not be considered valid unless in writing and signed by the party giving such notice and no waiver shall be deemed a waiver of any subsequent breach or default of same.

D. The paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit the contents of such.

E. The validity, construction, interpretation and enforceability of this Agreement shall be determined and governed by the laws of the State of New Mexico.

F. This Agreement shall be binding upon and inure to the benefit of the company and its successors and assigns.

G. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.



Executed this 15th day of March, 2007.

Gridline Communications Holdings, Inc,

By: ______________________
Terry Dillon, President, CEO

Jerome F. Beckes Note Holder

By: ______________________

# BRIDGE NOTE AGREEMENT

This Agreement by and between Gridline Communications Holdings, Inc., a corporation duly organized and existing under the laws of the State of Delaware, "Corporation" and Jerome F. Beckes, "Note Holder".

WITNESSETH:

WHEREAS, Note Holders agree to lend Corporation the aggregate sum of Three Hundred Thousand Dollars ($300,000.00), in exchange for this Eighteen percent (18%) Bridge Note.

In consideration of the mutual covenants and conditions contained in this agreement, the parties agree, represent and warrant as follows:

1. Issue of Note

A. The Corporation hereby issues its Eighteen (18%) percent note, "Note" in the aggregate principal amount of Three Hundred Thousand Dollars ($300,000.00) to mature on the ninth (9th) month anniversary of the executed date of this Agreement, to bear interest on the unpaid principal thereof at the rate of Eighteen (18%) percent per annum until maturity, payable on the maturity date of this Agreement. For the purposes of calculating interest for any period for which the interest shall be payable, such interest shall be calculated on the basis of a thirty (30) day month and a three hundred sixty (360) day year. The Corporation will promptly and punctually pay to Note Holder or their nominee the full principal and accrued interest on the Note without presentment of the Note. In the event the Corporation defaults on the payment of interest and principal, then Note Holder may, at his option, without notice, declare the entire principal and the interest accrued thereon immediately due and payable and may proceed to enforce the collection thereof.

B. At signing, The Corporation shall execute and deliver to Note Holder a Warrant to purchase 600,000 shares of Common Stock of Gridline. The Corporation will authorize the issuance of and reserve for such purchase such a number of additional shares of common stock, "Warrant Stock" as may from time to time be the maximum number required for issuance upon exercise of the Warrant pursuant to the privileges hereinafter stated.

2. Sale and Purchase of Note and Stock

The Corporation will sell the Note to the purchaser, who agrees to purchase the principal amount of the Note, subject to the terms and conditions of and in reliance upon the representations and warranties of the Corporation contained in this agreement.

3. Representations and Warranties by the Corporation

A. Corporation, a duly organized corporation existing in good standing under the laws of the State of Delaware has the corporate power to own its own property and to carry on in the business as it is now being conducted.

B. There is no action or proceeding pending or threatened against the Corporation before any court or administrative agency, the determination of which might result in any material adverse change in the business of the Corporation.

C. The Corporation has title to the respective properties and assets including the properties and assets reflected on the financial statement for the year ending December 31, 2006 and which assets and properties are subject to no liens, mortgages, encumbrances or charges.

D The Corporation is not a party to any contract or agreement or subject to any restriction which materially and adversely affects its business, property, assets, or financial condition, and neither the execution nor delivery of this Agreement, nor the confirmation of the transactions contemplated herein, nor the fulfillment of the terms hereof, nor the compliance with the terms and provisions hereof and of the Note, will conflict with or result in the breach of the terms, conditions or provisions or constitute a default, under the Articles of Incorporation or of any Agreement or instrument to which the Corporation is now a party.

**Exhibit 2**

E. The Corporation has not declared, set aside, paid or made any dividend or other distributions with respect to its capital stock and has not made or caused to be made directly or indirectly, any payment or other distribution of any nature whatsoever to any of the holders of its capital stock except for regular salary payments for services rendered and the reimbursement of business expenses.

F. The Corporation owns or possesses adequate licenses or other rights to use, all patents, trademarks, trade names, trade secrets, and copyrights used in its business. No one has asserted to the Corporation that its operations infringe on the patents, trademarks, trade secrets or other rights utilized in the operation of its business.

4. Representations and Warranties by the Note Holders

The Note Holders represent and warrant that he is purchasing the Note for investment purposes and not with the view to or for sale in connection with any distribution thereof and that they have no present intent to sell, give or otherwise transfer the Note.

5. Prepayment of the Note

Corporation shall have the right to make prepayments on principal of the Note at any time. Such prepayment shall be accompanied by a payment of all accrued interest to date. There shall be no premium for the amount so prepaid however, prepayment shall not change or modify the Warrant terms.

6. Event of Default

A. The breach of any of the events or conditions contained in this Agreement shall constitute an event of default under this Agreement. Any one or more of the Holders of the Note may give written notice of such breach and if the Corporation shall within thirty (30) days after receipt of such written notice have failed to correct such occurrence or condition, then the Holder of any one of the Note may, at its option and without notice, declare the entire principal and interest accrued thereon immediately due and payable and may proceed with collection.

B. In case of default in the payment of any installment or principal, the Holders of the Note may, at their option and without notice, declare the entire principal and the interest accrued thereof immediately due and payable and may proceed to enforce the collection thereof.

7. Miscellaneous

A. Any and all notices, approvals or other communications to be sent to the parties shall be deemed validly and properly given if made in writing and delivered by hand or by registered or certified mail, return receipt requested, and addressed to the Corporation at its principal office or to the Holder of the Note at the addresses given to the Corporation by Note Holder.

B. This Agreement may not be modified, amended or terminated except by written agreement executed by all the parties hereto.

C. The waiver of any breach or default hereunder shall not be considered valid unless in writing and signed by the party giving such notice and no waiver shall be deemed a waiver of any subsequent breach or default of same.

D. The paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit the contents of such.

E. The validity, construction, interpretation and enforceability of this Agreement shall be determined and governed by the laws of the State of New Mexico.

F. This Agreement shall be binding upon and inure to the benefit of the company and its successors and assigns.

G. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

Executed this 10th day of May, 2007.

Gridline Communications Holdings, Inc,

By: ______________________
Terry Dillon, President, CEO

Jerome F. Beckes Note Holder

By: ______________________




BRIDGE NOTE AMENDMENT

11 February, 2008

This document will serve as formal amendment to that certain Bridge Note issued by Gridline Communications Holdings, Inc. to Jerome Beckes, in the amount of $500,000, dated 14 March, 2007. The Bridge Note currently has a Principal amount due in the amount of $500,000 and interest due in the amount of $54,504.11 (as of 11 February, 2008). Further, the Warrant issued for purchase of Gridline Communications Holdings, Inc. Common Stock (par value of $0.01) has been increased from 500,000 to 800,000 shares bearing a strike price of $1.00 per share, and is hereby extended from March 13, 2009 to March 13, 2012. All other terms of the Warrant Agreement remain unchanged.

.

Such amendment is effective as of 11 February, 2008

Gridline Communications Holdings, Inc.

By: ______________________________
Terry Dillon, President, CEO

GRIDLINE COMMUNICATIONS HOLDINGS, INC.
1312 Basehart Road SE, Suite 200
Albuquerque, New Mexico 87106
Tel: +505.715.6002 Fax: +505.213.0191
www.gridlinecommunications.com

**Exhibit 3**




BRIDGE NOTE AMENDMENT

11 February, 2008

This document will serve as formal amendment to that certain Bridge Note issued by Gridline Communications Holdings, Inc. to Jerome Beckes, in the original amount of $300,000, dated 10 May, 2007. An additional amount of $30,000 has been purchased under the same terms and conditions of the original note on 1 October, 2007. The Bridge Note is amended to reflect the additional $30,000 and does currently have a Principal amount due in the amount of $330,000 and interest due in the amount of $42,948.49 (as of 11 February, 2008). Further, the Warrant issued for purchase of Gridline Communications Holdings, Inc. Common Stock (par value of $0.01) has been increased from 600,000 to 660,000 shares bearing a strike price of $1.00 per share, and is hereby extended from May 09, 2010 to May 09, 2012. All other terms of the Warrant Agreement remain unchanged.

.

Such amendment is effective as of 11 February, 2008

Gridline Communications Holdings, Inc.

By: ______________________

Terry Dillon, President, CEO

GRIDLINE COMMUNICATIONS HOLDINGS, INC.
1312 Basehart Road SE, Suite 200
Albuquerque, New Mexico 87106
Tel: +505.715.6002 Fax: +505.213.0191
www.gridlinecommunications.com

**Exhibit 4**

# BRIDGE NOTE AGREEMENT

This Agreement by and between Gridline Communications Holdings, Inc., a corporation duly organized and existing under the laws of the State of Delaware, "Corporation" and Jerome F. Beckes, "Note Holder".

W I T N E S S E T H:

WHEREAS, Note Holders agree to lend Corporation the aggregate sum of Fifty Thousand Dollars ($ 50,000.00), in exchange for this Eighteen (18) percent Bridge Note.

In consideration of the mutual covenants and conditions contained in this agreement, the parties agree, represent and warrant as follows:

1. Issue of Note

A. The Corporation hereby issues its Eighteen (15) percent note, "Note" in the aggregate principal amount of Fifty Thousand Dollars ($50,000.00) to mature on the ninetieth (90th) day anniversary of the executed date of this Agreement, to bear simple interest on the principal thereof at the rate of Eighteen (18) percent, payable on the maturity date of this Agreement. The Corporation will promptly and punctually pay to Note Holder or their nominee the full principal and Eighteen (18) percent simple interest on the Note without presentment of the Note. In the event the Corporation defaults on the payment of interest and principal, then Note Holder may, at his option, without notice, declare the entire principal and the interest accrued thereon immediately due and payable and may proceed to enforce the collection thereof.

B. At signing, The Corporation shall execute and deliver to Note Holder a Warrant to purchase One Hundred Thousand (100,000) shares of Common Stock of Gridline. The Corporation will authorize the issuance of and reserve for such purchase such a number of additional shares of common stock, "Warrant Stock" as may from time to time be the maximum number required for issuance upon exercise of the Warrant pursuant to the privileges hereinafter stated.

2. Sale and Purchase of Note and Stock

The Corporation will sell the Note to the purchaser, who agrees to purchase the principal amount of the Note, subject to the terms and conditions of and in reliance upon the representations and warranties of the Corporation contained in this agreement.

3. Representations and Warranties by the Corporation

A. Corporation, a duly organized corporation existing in good standing under the laws of the State of Delaware has the corporate power to own its own property and to carry on in the business as it is now being conducted.

B. There is no action or proceeding pending or threatened against the Corporation before any court or administrative agency, the determination of which might result in any material adverse change in the business of the Corporation.

C. The Corporation has title to the respective properties and assets including the properties and assets reflected on the financial statement for the year ending December 31, 2006 and which assets and properties are subject to no liens, mortgages, encumbrances or charges.

D The Corporation is not a party to any contract or agreement or subject to any restriction which materially and adversely affects its business, property, assets, or financial condition, and neither the execution nor delivery of this Agreement, nor the confirmation of the transactions contemplated herein, nor the fulfillment of the terms hereof, nor the compliance with the terms and provisions hereof and of the Note, will conflict with or result in the breach of the terms, conditions or provisions or constitute a default, under the Articles of Incorporation or of any Agreement or instrument to which the Corporation is now a party.

E. The Corporation has not declared, set aside, paid or made any dividend or other distributions with respect to its

**Exhibit 5**

capital stock and has not made or caused to be made directly or indirectly, any payment or other distribution of any nature whatsoever to any of the holders of its capital stock except for regular salary payments for services rendered and the reimbursement of business expenses.

F. The Corporation owns or possesses adequate licenses or other rights to use, all patents, trademarks, trade names, trade secrets, and copyrights used in its business. No one has asserted to the Corporation that its operations infringe on the patents, trademarks, trade secrets or other rights utilized in the operation of its business.

4. Representations and Warranties by the Note Holders

The Note Holders represent and warrant that he is purchasing the Note for investment purposes and not with the view to or for sale in connection with any distribution thereof and that they have no present intent to sell, give or otherwise transfer the Note.

5. Prepayment of the Note

Corporation shall have the right to make prepayments on principal of the Note at any time. Such prepayment shall be accompanied by a payment of the simple interest of Ten (10) percent of the Original principal. There shall be no premium for the amount so prepaid however, prepayment shall not change or modify the Warrant terms.

6. Event of Default

A. The breach of any of the events or conditions contained in this Agreement shall constitute an event of default under this Agreement. Any one or more of the Holders of the Note may give written notice of such breach and if the Corporation shall within ten (10) days after receipt of such written notice have failed to correct such occurrence or condition, then the Holder of any one of the Note may, at its option and without notice, declare the entire principal and interest accrued thereon immediately due and payable and may proceed with collection.

B. In case of default in the payment of the Note, the Holders of the Note may, at their option and without notice, declare the entire principal and interest thereof immediately due and payable and may proceed to enforce the collection thereof.

7. Miscellaneous

A. Any and all notices, approvals or other communications to be sent to the parties shall be deemed validly and properly given if made in writing and delivered by hand or by registered or certified mail, return receipt requested, and addressed to the Corporation at its principal office or to the Holder of the Note at the addresses given to the Corporation by Note Holder.

B. This Agreement may not be modified, amended or terminated except by written agreement executed by all the parties hereto.

C. The waiver of any breach or default hereunder shall not be considered valid unless in writing and signed by the party giving such notice and no waiver shall be deemed a waiver of any subsequent breach or default of same.

D. The paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit the contents of such.

E. The validity, construction, interpretation and enforceability of this Agreement shall be determined and governed by the laws of the State of New Mexico.

F. This Agreement shall be binding upon and inure to the benefit of the company and its successors and assigns.

G. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

Executed this Twelfth day of February, 2008.

Gridline Communications Holdings, Inc,

By: ______________________
Terry Dillon, President, CEO

Jerome F. Beckes, Note Holder

By: ______________________




BRIDGE NOTE AMENDMENT

08 July, 2008

This document will serve as formal amendment to that certain Bridge Note issued by Gridline Communications Holdings, Inc. to Jerome Beckes, in the original amount of $500,000, dated 14 March, 2007, and amended on 11 February, 2008. The Bridge Note does currently have a Principal amount due in the amount of $410,000 ( reflecting a $90,000.00 payment against Principal on 11 April, 2008) and interest due in the amount of $114,,943.56 (as of 8 July, 2008). Further, the Warrant issued for purchase of Gridline Communications Holdings, Inc. Common Stock (par value of $0.01) in the amount of 800,000 shares is amended to bear a strike price of $0.25 per share. All other terms of the Warrant Agreement remain unchanged.

.

Such amendment is effective as of 08 July, 2008

Gridline Communications Holdings, Inc.

By:____________________________
Terry Dillon, President, CEO

GRIDLINE COMMUNICATIONS HOLDINGS, INC.
1312 Basehart Road SE, Suite 200
Albuquerque, New Mexico 87106
Tel: +505.715.6002 Fax: +505.213.0191

**Exhibit 6**




BRIDGE NOTE AMENDMENT

8 July, 2008

This document will serve as formal amendment to that certain Bridge Note issued by Gridline Communications Holdings, Inc. to Jerome Beckes, in the original amount of $300,000, dated 10 May, 2007, and amended on 11 February, 2008. The Bridge Note does currently have a Principal amount due in the amount of $330,000 and interest due in the amount of $67,033.97 (as of 8 July, 2008). Further, the Warrant issued for purchase of Gridline Communications Holdings, Inc. Common Stock (par value of $0.01) in the amount of 660,000 shares is amended to bear a strike price of $0.25 per share. All other terms of the Warrant Agreement remain unchanged.

.

Such amendment is effective as of 08 July, 2008

Gridline Communications Holdings, Inc.

By:___________________________________
Terry Dillon, President, CEO

GRIDLINE COMMUNICATIONS HOLDINGS, INC.
1312 Basehart Road SE, Suite 200
Albuquerque, New Mexico 87106
Tel: +505.715.6002 Fax: +505.213.0191

**Exhibit 7**




BRIDGE NOTE AMENDMENT

21 July, 2008

This document will serve as formal amendment to that certain Bridge Note issued by Gridline Communications Holdings, Inc. to Jerome Beckes, in the original amount of $50,000, dated 12 February, 2008. An additional amount of $15,000 has been purchased under the same terms and conditions of the original note on 18 June, 2008. The Bridge Note is amended to reflect the additional $15,000 and does currently have a Principal amount due in the amount of $65,000 and interest due in the amount of $4,189.32 (as of 21 July, 2008). Further, the Warrant issued for purchase of Gridline Communications Holdings, Inc. Common Stock (par value of $0.01) has been increased from 100,000 to 130,000 shares and is amended to bear a strike price of $0.25 per share.of $1.00 per share. All other terms of the Warrant Agreement remain unchanged.

.

Such amendment is effective as of 21 July, 2008

Gridline Communications Holdings, Inc.

By: ______________________
Terry Dillon, President, CEO

GRIDLINE COMMUNICATIONS HOLDINGS, INC.
1312 Basehart Road SE, Suite 200
Albuquerque, New Mexico 87106
Tel: +505.715.6002 Fax: +505.213.0191
www.gridlinecommunications.com

**Exhibit 8**

AMENDMENT AND EXTENSION AGREEMENT

This AMENDMENT AND EXTENSION AGREEMENT (this "Agreement") made as of the 24th day of June, 2009, is entered into by and between Jerome F. Beckes(hereinafter, collectively called "Grantee") and Gridline Communications Holdings, Inc., a Delaware corporation (hereinafter called "Grantor").

WITNESSETH:

WHEREAS, Gridline Communications Holdings, Inc. has executed and delivered to Grantee those certain "Bridge Notes" and last "Amendment" (Notes) dated;

1. March 14, 2007 Bridge Note payable to the order of Grantee in the original principal sum of $500,000 with interest and principal payable as therein provided and amended; and
2. May 10, 2007 Bridge Note payable to the order of Grantee in the original principal sum of $300,000 and amended to $330,000 with interest and principal payable as therein provided and amended; and
3. February 12, 2008 Bridge Note payable to the order of Grantee in the original principal sum of $50,000 and amended to $65,000, with interest and principal payable as therein provided and amended;

WHEREAS, by virtue of the Amendment, attached as Exhibit "A", the Notes are now due and payable upon completion of any investment or funding of $15,000,000 or more but in no event later than October 01, 2009; and

WHEREAS, Grantee is the owner and holder of the Note;

NOW, THEREFORE, for and in consideration of the mutual covenants contained herein and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The Maturity Date of the Bridge Notes as amended is hereby extended to ~~August~~ October 01, 2009.

2. Grantor hereby represents and warrants that (a) this Agreement and the Amendment constitute the legal, valid and binding obligations of Grantor, enforceable in accordance with their terms; (b) to the best of Grantor's knowledge there exists no uncured default under the Note. Grantor agrees to indemnify and hold Grantee harmless against any loss, claim, damage, liability or expense (including without limitation attorneys' fees) incurred as a result of any representation or warranty made by it herein proving to be untrue in any respect.

3. Grantor, upon request from Grantee, agrees to execute such other and further documents as may be reasonably necessary or appropriate to consummate the transactions contemplated herein, evidenced by the Note.

**Exhibit 9**

4. If Grantor shall fail to keep or perform any of the covenants or agreements contained herein or if any statement, representation or warranty contained herein is false, misleading or erroneous in any material respect, Grantor shall be deemed to be in default and Grantee shall be entitled at its option to exercise any and all of the rights and remedies granted or which Grantee may otherwise be entitled, whether at law or in equity.

5. Except as provided herein and in the Amendment, the terms and provisions of the Original Note, shall remain unchanged and shall remain in full force and effect. Any Amendment herein or in the Amendment shall in no way affect the payment of the Note. The Note as modified and amended hereby is hereby ratified and confirmed in all respects.

6. Grantor hereby acknowledges that there are no offsets, claims or defenses to the Note.

7. Grantor acknowledges that the execution of this Agreement by Grantee is not intended nor shall it be construed as (i) an actual or implied waiver of any subsequent default under the Notes or (ii) an actual or implied waiver of any condition or obligation imposed upon Grantor pursuant to the Notes, except to the extent expressly set forth herein.

8. This Agreement may be executed in any number of counterparts. All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

9. The terms and provisions hereof shall be binding upon and inure to the benefit of the parties hereto, their heirs, representatives, successors and assigns.

IN WITNESS WHEREOF, this Agreement is executed as of the respective dates of acknowledgment but is effective as of the date first above written.

GRANTOR: Gridline Communications Holdings, Inc.

By: ______________________________
Terry Dillon, President, COO

GRANTEE: Jerome F Beckes

By: ______________________________

EXHIBIT "A"
AMENDMENT

This Amendment addresses all agreed terms and conditions for extension of those certain Bridge Notes and Amendments (NOTES) granted by Gridline Communications Holdings, Inc.(GRANTOR) to Jerome Beckes(GRANTEE).

1. The NOTE's Original Maturity dates are hereby extended to October 01, 2009.

2. The Principal and all accrued interest of the NOTES, through June 24, 2009, such amount being $1,736,089.84, shall be considered the base Principal of the Amendment and Extension.

3. Interest on the Amended base Principal shall be 18% simple interest for the term of this extension..

4. In exchange for this Amendment and Extension, Grantor shall reduce the per share strike price of Holder's Warrants to purchase Common Stock in Gridline Communications Holdings, Inc. from $0.25 to $0.15 per share

   Gridline Communications Holdings, Inc. further agrees that the Grantee shall receive the same rights and privileges of any or all other holders of 144 Restricted common shares of GCH, including any "piggy back" registration rights that may be granted upon GCH filing of a public registration of its securities. Such rights shall apply to shares currently held by Grantee and any shares purchased through exercise of Grantee's warrants up to 5 days prior to such public registration.

   All Warrants for Shares granted under this Amendment shall be adjusted identically to any other shares of Common Stock in the event of any forward or reverse split of the Company's Common Stock.

Agreed this 24th day of June, 2009

GRANTOR: Gridline Communications Holdings, Inc.

By: [signature]
Terry Dillon, President, CEO

GRANTEE: Jerome F. Beckes

[signature]



Gridline

AMENDMENT AND EXTENSION AGREEMENT

This AMENDMENT AND EXTENSION AGREEMENT (this "Agreement") made as of the 5th day of June, 2010, is entered into by and between Jerome F. Beckes(hereinafter, collectively called "Grantee") and Gridline Communications Holdings, Inc., a Delaware corporation (hereinafter called "Grantor").

WITNESSETH:

WHEREAS, Gridline Communications Holdings, Inc. has executed and delivered to Grantee those certain "Bridge Notes" and last "Amendment" (Notes) dated;

1. March 14, 2007 Bridge Note payable to the order of Grantee in the original principal sum of $500,000 with interest and principal payable as therein provided and amended; and
2. May 10, 2007 Bridge Note payable to the order of Grantee in the original principal sum of $300,000 and amended to $330,000 with interest and principal payable as therein provided and amended; and
3. February 12, 2008 Bridge Note payable to the order of Grantee in the original principal sum of $50,000 and amended to $65,000, with interest and principal payable as therein provided and amended;

WHEREAS, by virtue of the Amendment, attached as Exhibit "A", the Notes are past due and payable upon completion of any investment or funding of $20,000,000 or more but in no event later than September 30, 2010; and

WHEREAS, Grantee is the owner and holder of the Note;

NOW, THEREFORE. for and in consideration of the mutual covenants contained herein and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The Maturity Date of the Bridge Notes as amended is hereby extended to September 30, 2010.

2. Grantor hereby represents and warrants that (a) this Agreement and the Amendment constitute the legal, valid and binding obligations of Grantor, enforceable in accordance with their terms; (b) to the best of Grantor's knowledge there exists no uncured default under the Note. Grantor agrees to indemnify and hold Grantee harmless against any loss, claim, damage, liability or expense (including without limitation attorneys' fees) incurred as a result of any representation or warranty made by it herein proving to be untrue in any respect.

**Exhibit 10**




3. Grantor, upon request from Grantee, agrees to execute such other and further documents as may be reasonably necessary or appropriate to consummate the transactions contemplated herein, evidenced by the Note.

4. If Grantor shall fail to keep or perform any of the covenants or agreements contained herein or if any statement, representation or warranty contained herein is false, misleading or erroneous in any material respect, Grantor shall be deemed to be in default and Grantee shall be entitled at its option to exercise any and all of the rights and remedies granted or which Grantee may otherwise be entitled, whether at law or in equity.

5. Except as provided herein and in the Amendment, the terms and provisions of the Original Note, shall remain unchanged and shall remain in full force and effect. Any Amendment herein or in the Amendment shall in no way affect the payment of the Note. The Note as modified and amended hereby is hereby ratified and confirmed in all respects.

6. Grantor hereby acknowledges that there are no offsets, claims or defenses to the Note.

7. Grantor acknowledges that the execution of this Agreement by Grantee is not intended nor shall it be construed as (i) an actual or implied waiver of any subsequent default under the Notes or (ii) an actual or implied waiver of any condition or obligation imposed upon Grantor pursuant to the Notes, except to the extent expressly set forth herein.

8. This Agreement may be executed in any number of counterparts. All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

9. The terms and provisions hereof shall be binding upon and inure to the benefit of the parties hereto, their heirs, representatives, successors and assigns.

IN WITNESS WHEREOF, this Agreement is executed as of the respective dates of acknowledgment but is effective as of the date first above written.

GRANTOR: Gridline Communications Holdings, Inc.

By: ____________________
Terry Dillon, President, COO

GRANTEE: Jerome F Beckes

By: ____________________




EXHIBIT "A"
AMENDMENT

This Amendment addresses all agreed terms and conditions for extension of those certain Bridge Notes and Amendments (NOTES) granted by Gridline Communications Holdings, Inc.(GRANTOR) to Jerome Beckes(GRANTEE).

1. The NOTE's Original Maturity dates are hereby extended to September 30, 2010.

2. The Principal, all accrued interests, and Penalties of the NOTES, through June 05, 2010, such amount being $3,046,624.23, shall be considered the base Principal of this Amendment and Extension.

3. In exchange for this Amendment and Extension, Grantor shall pay a penalty on the Amended base Principal. Such penalty shall be $5,000.00 per day for the term of this extension.

4. All other non monetary terms of the Original Notes and subsequent Amendment and Extension Agreements shall remain in force.

Agreed this 5th day of June, 2010

GRANTOR: Gridline Communications Holdings, Inc.

By: ______________________
Terry Dillon, President, CEO

GRANTEE: Jerome F. Beckes

______________________